UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES CHRISTIAN,

        Plaintiff,

v.

RANDEE REWERTS et al.,

        Defendants.

_____/

Case No. 1:24-cv-159

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF personnel in their individual and official capacities: Warden Randee Rewerts; Corrections Officers Unknown Gregory and Unknown Bigalow; Hearings Investigators K. Smith and S. Kurts; Hearing Officer

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Unknown Hawkins; Assistant Deputy Wardens Unknown Nevis and Unknown Garcia; Resident Unit Manager Unknown Smith; and Deputy Warden Unknown Mates.

Plaintiff alleges that on November 1, 2023, Plaintiff was placed in restraints after Defendant Gregory entered his cell due to Plaintiff's cellmate "Jolly" blowing a cloud of smoke into the air and placing a prison-made lighter on Plaintiff's footlocker. (ECF No. 8, PageID.47.) Pursuant to an order by Defendant Bigalow, Plaintiff and Jolly were placed on non-bond status after Defendant Gregory issued each of them a misconduct charge for possession of dangerous contraband. (*Id.*)

On November 13, 2023, Defendant Hawkins conducted the misconduct hearing and found Plaintiff guilty of being in possession of dangerous contraband, which is a class I misconduct, even though Plaintiff's cellmate Jolly had pleaded guilty to the charge and admitted placing the lighter on the bottom bunk locker, which was in Plaintiff's area of control. Plaintiff received 21 days' loss of privileges while his cellmate only received fifteen days loss of privileges. (*Id.*) Plaintiff also asserts that the hearing was conducted after the "7 day statute of limitations for prisoners placed on nonbond status pending a hearing." (*Id.*)

Plaintiff's request for an appeal packet was denied by Defendant Hawkins at the hearing. (*Id.*, PageID.54–55.) Plaintiff mailed Defendant K. Smith kites asking for appeal forms on November 16, 2023, and November 21, 2023, but his requests were denied by Defendants K. Smith and Kurts. (*Id.*, PageID.55.)

On November 22, 2023, non-party Blair and Defendants Mates, Resident Unit Manager Unknown Smith, Garcia, Nevis, and Rewerts "ordered maintenance staff to place a metal cap on the cell[']s electricity outlet," which prevented Plaintiff from utilizing any of his electrical appliances, such as a television, radio, fan, JP6 player, or typewriter until December 26, 2023. (*Id.*,

4

PageID.47–48.) Plaintiff asserts that the cell had no ventilation ducts and can become very warm and almost suffocating during certain times of the year. Plaintiff states that without his fan, he had difficulty breathing at night and suffered from coughing and headaches. (*Id.*, PageID.48.)

Plaintiff also contends that "of the last 50 white prisoners who were [found] guilty of possession of dangerous contraband, none were placed on unlawful restrictions set up to last until the Thanksgiving and Christmas holidays had ended." (*Id.*, PageID.54.)

Plaintiff asserts that Defendants violated his Fourteenth Amendment[2] due process and equal protection rights and his First Amendment right to be free from retaliation. Plaintiff also asserts that Defendants violated state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

---

[2] In addition to alleging that Defendants violated his Fourteenth Amendment rights, Plaintiff asserts that they violated his Fifth Amendment rights. (ECF No. 8, PageID.56.) However, the Fifth Amendment applies only to claims against federal employees. In this action, Plaintiff sues employees of the MDOC. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff asserts that Defendants violated his due process rights in relation to the handling of his major misconduct ticket. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks

6

whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, *i.e.*, an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000,[3] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is

---

[3] Plaintiff is serving time for crimes committed in 2013 and 2018. *See* MDOC Offender Tracking System Information, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber= 815288 (last visited May 31, 2024).

considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff does not specify whether he was confined in administrative segregation. Regardless, confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and

8

significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

The same is true for the loss of yard and phone privileges, the loss of prison employment, and the loss of ability to participate in a religious program, all of which are expected consequences of confinement in segregation. If confinement in segregation does not implicate a protected liberty interest, it follows that the loss of privileges stemming from that confinement does not implicate such an interest. Furthermore, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed

by inmates." *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)).

In this case, Plaintiff states that he was sentenced to 21 days' loss of privileges and was deprived of electricity in his cell from November 22, 2023, until December 26, 2023. For the reasons discussed above, the deprivations asserted by Plaintiff, his 21-day loss of privileges and his inability to use his television or other electrical appliances in his cell, were insufficient to trigger a right to due process. Therefore, Plaintiff's due process claims are properly dismissed.

### B.     Equal Protection

Plaintiff makes a conclusory assertion that "of the last 50 white prisoners who were [found] guilty of possession of dangerous contraband, none were placed on unlawful restrictions set up to last until the Thanksgiving and Christmas holidays had ended." (ECF No. 8, PageID.54.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). In order to state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis. *Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998 v. City of Mentor, Ohio*, 11 F.4th 462, 473 (6th Cir. 2021). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"

*Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff's equal protection claim is entirely conclusory. Plaintiff fails to allege any details regarding the "the last 50 white prisoners who were found guilty of possession of dangerous contraband" such as the nature of the contraband they possessed or the history of prior misconduct tickets they received. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff has failed to allege sufficient facts to show that he and the white prisoners who received possession of dangerous contraband misconducts were similarly situated in all relevant respects, his equal protection claims are properly dismissed.

### C. Retaliation

Plaintiff asserts that Defendant Hawkins retaliated against him for pleading not guilty, preparing a defense to the misconduct, and requesting an appeal form by finding Plaintiff guilty of the misconduct. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendant Hawkins found him guilty of the misconduct because of a desire to retaliate against Plaintiff for pleading not guilty, preparing a defense to the misconduct, and requesting an appeal form. Accordingly, his speculative allegation fails to state a claim.

### D. Eighth Amendment

Finally, Plaintiff contends that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal

12

civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial

risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff claims that the conditions of his confinement caused him to suffer from "psychological impairments of a permanent [and] continuing nature as well as insomnia, paranoia, and depression." (ECF No. 8, PageID.56.) However, the only conditions about which Plaintiff complains are the 21-day loss of privileges and the lack of electricity in his cell from November 22, 2023, to December 26, 2023, which deprived him of the ability to use his television, radio, JP6 player, fan, or typewriter. Plaintiff makes a conclusory assertion that at certain times of the year, his cell is hot and stuffy, and it is difficult to sleep and breathe. However, Plaintiff states that the deprivation of electricity occurred during the late autumn to early winter. Plaintiff fails to allege that temperatures were dangerously high during this period. Because Plaintiff fails to allege any facts showing that he faced a serious risk to his health or safety, his Eighth Amendment claims are properly dismissed.

### E. State Law Claims

Plaintiff also claims that Defendants violated his rights under state law. Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under Section 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction, and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.

14

*See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be

frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  June 10, 2024                             /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  United States Magistrate Judge